IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| Plaintiff : | |
| : | |
| : | |
| v. : | |
| : | |
| STANLEY NARCISSE, : | CRIMINAL NO. 1:CR-10-043-01 |
| ERIC PAUL EMMANUEL, : | CRIMINAL NO. 1:CR-10-043-02 |
| Defendant : | |

*M E M O R A N D U M*

In February 2010, defendants, Stanley Narcisse and Eric Paul Emmanuel, were indicted for conspiracy to distribute and possession with intent to distribute in excess of 1,000 kilograms of marijuana. The defendants are long-haul truckers. The marijuana was discovered as part of a warrantless search of their trailer when they were stopped by a Pennsylvania state trooper for passing a weigh station.

We are considering the defendants' motions to suppress the marijuana seized and any statements the defendants made incident to the seizure. We held a hearing on the motions, where the two defendants and two state troopers testified. The government argues the search was valid under the Fourth Amendment because: (1) the defendants consented to the search; (2) even absent consent, the trooper had reasonable suspicion of criminal activity justifying continuing the defendants' detention until a canine sniff of the exterior of the trailer gave the trooper probable cause to search the trailer for a controlled substance, a search that did not require a warrant; and (3) the trooper could search the trailer in any event as an incident to the violation of state law that required the defendants to stop at the weigh station.

A search based on consent is a specific exception to the Fourth Amendment's warrant requirement. *United States v. Wilson*, 413 F.3d 382, 388 (3d

Cir. 2005). The voluntariness of the consent is a question of fact for a court to determine based upon the totality of the circumstances. *United States v. Givan*, 320 F.3d 452, 459 (3d Cir. 2003) (quoting *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973)). The "totality of the circumstances inquiry . . . include[s] the setting in which the consent was obtained, the parties' verbal and non-verbal actions, and the age, intelligence, and educational background of the consenting individual." *Id.*

The hearing revealed the following. On January 31, 2010, Trooper Livingston, the trooper who stopped the defendants, was working at a truck weigh station along interstate I-81 in Dauphin County. The lights at the weigh station were lit, meaning that trucks had to pull from the highway and be weighed. He saw two tractor-trailers pass the weigh station, a violation of 75 Pa. Con. St. Ann. § 3111(a). The trooper pursued both units and stopped them on the highway. Emmanuel was the driver of the first tractor-trailer, and Narcisse was in the passenger seat. The defendants do not contest the validity of the stop.[1]

Trooper Livingston told Emmanuel that he had failed to stop at the weigh station and that the trooper was going to conduct a level-two inspection of the tractor and trailer under state law, (which could include an inspection of the inside of the trailer). At the trooper's request, the defendants produced their documentation, driver's licenses, medical cards, registration, the bill of lading, and their log books. He examined these documents briefly, but for safety reasons, he directed the drivers of both vehicles to move them to the nearest exit of the interstate, Exit 85, about three miles away, and park on the side of the ramp.[2]

---

[1] The other tractor-trailer was allowed to leave after consent was given to a search, and a canine sniff revealed no controlled substances.

[2] Both defendants testified that they waited by the side of I-81 for forty to forty-five minutes before they moved to the ramp, but we reject this testimony.

2

The trooper conducted a level-two inspection of the tractor-trailer but did not look inside the trailer. He noted four violations which he recorded in an inspection report. The trooper then had Emmanuel exit the truck. He cited him for one of the violations, failure to stop at the weigh station, and issued warnings for the other three. The trooper showed the inspection report to Emmanuel, had him sign it, gave him a copy of his citation, and of the report, and returned all of his and Narcisse's documentation. He then told Emmanuel he was free to go and Emmanuel began walking toward his truck.

The parties disagree about what happened next. According to the trooper, he asked Emmanuel if he could ask a few more questions. Emmanuel turned around and came back to where the trooper was standing. The trooper asked Emmanuel if he had anything illegal in the truck or trailer. Emmanuel replied no. The trooper then asked Emmanuel in a regular voice for consent to search the vehicle, and Emmanuel said yes. At the time Livingston asked this question, he was in uniform with his gun holstered. There was another trooper nearby but he was unarmed.

The trooper then asked Narcisse to exit the vehicle. Narcisse did so and the trooper asked Narcisse if there was anything illegal in the truck. Narcisse said no. The trooper then asked him if he would mind if the trooper searched the vehicle. Narcisse gave consent. The trooper then spoke to Emmanuel a second time, asking if he understood that he was asking for consent, and Emmanuel said yes, that they could search the vehicle.[3]

A drug-sniffing dog was used. The dog alerted to the presence of a controlled substance. When the trailer was opened, the marijuana was discovered.

---

[3] The officer who conducted the canine search also testified that when he asked the defendants in passing if they had consented to a search, they agreed.

The defendants testified differently. According to Narcisse, the trooper returned their documents and said they were free to go. As they were leaving, he called them back, telling them he wanted to speak to them. The trooper said to "stay right here." When the trooper asked for consent to search the vehicle, he refused.

According to Emmanuel, Trooper Livingston told them both they were free to go. Emmanuel came back, and Livingston asked if they had anything illegal in the truck, and he said no. On cross-examination, he testified that Livingston called him back and told him to "stand right here." When the trooper asked for consent to search the vehicle, he also refused.

Upon consideration of the testimony, we find the troopers' testimony credible and that the defendants consented to the search. We also conclude that the totality of the circumstances establishes that the consent was voluntary. The custodial nature of the stop ended when the trooper returned the papers to Emmanuel and Emmanuel walked toward the truck. There was no evidence that the age, intelligence, or educational background of the defendants played any negative part in the validity of the consent. We add that there were three other troopers at the scene at the pertinent time, and that the request for consent was not made in a threatening manner. We thus conclude that the defendants consented to the search of the trailer and that there was no Fourth Amendment violation. *See Wilson*, *supra*, 413 F.3d at 387.

We will issue an appropriate order.

/s/William W. Caldwell
William W. Caldwell
United States District Judge

Date: July 26, 2010

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
|     Plaintiff : | |
| : | |
| v. : | |
| STANLEY NARCISSE, : | CRIMINAL NO. 1:CR-10-043-01 |
| ERIC PAUL EMMANUEL, : | CRIMINAL NO. 1:CR-10-043-02 |
|     Defendant : | |

*O R D E R*

AND NOW, this 26th day of July, 2010, it is ordered that the defendants' joint motion to suppress evidence (doc. 25) and joint supplemental motion to suppress evidence (doc. 43) are denied.

                      /s/William W. Caldwell
                      William W. Caldwell
                      United States District Judge