IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | : |
| | : |
| | : CRIMINAL NO. 1:10-CR-0043-1 |
| v. | : |
| | : (Judge Caldwell) |
| STANLEY NARCISSE, | : |
| Defendant | : |
| | : |

*M E M O R A N D U M*

I. *Introduction*

Defendant, Stanley Narcisse, has filed a counseled motion under 28 U.S.C. § 2255 to vacate his conviction and sentence. Defendant was named in a superseding three-count indictment. Count 1 charged him with a conspiracy, beginning about May 2009 and continuing through January 31, 2010, to possess with intent to distribute in excess of 1,000 pounds of marijuana in Pennsylvania and Arizona, a violation of 21 U.S.C. § 846. Count 2 charged him with possession with intent to distribute in excess of 1,000 pounds of marijuana, a violation of 21 U.S.C. § 841(a)(1), within the same time frame and geographic area as alleged in Count 1. Count 3 charged him with interstate transportation of stolen property, a violation of 18 U.S.C. § 2314.

After a jury trial, Defendant was found guilty on all three counts. In May 2011, he was sentenced to an aggregate term of 188 months' imprisonment. His direct appeal was denied. *United States v. Narcisse*, 501 F. App'x 142 (3d Cir. 2012)(nonprecedential).

Defendant then filed his 2255 motion and a supporting memorandum of law. We decided the motion was not specific enough, and by order of November 26, 2013, dismissed it, but allowed leave to amend. *United States v. Narcisse*, 2013 WL

6191664 (M.D. Pa.). Defendant filed another 2255 motion (identical to his first one) accompanied by an amended memorandum of law in support. The amended memorandum supplies additional allegations and incorporates by reference some of the arguments made in the original memorandum.

II.  *The 2255 Claims*

Together, the memorandum of law and amended memorandum of law make the following claims of trial-counsel ineffectiveness. First, trial counsel failed to file a motion to suppress the introduction into evidence of marijuana seized during the traffic stop of Defendant in Arizona in May 2009 while he was operating a tractor-trailer. (Doc. 167, p. 2).

Second, trial counsel failed to move "to dismiss the counts relating to the Arizona marijuana" on the due process ground of destruction of evidence. (Doc. 160, p. 6; doc. 167, pp. 2-3). Third, trial counsel failed to oppose the government's "untimely" notice under Fed. R. Evid. 404(b) of its intent to introduce the Arizona evidence, specifically, that Defendant had been stopped on May 13, 2009, driving a tractor-trailer which contained 1,000 pounds of marijuana. (Doc. 160, pp. 6, 8).

Fourth, trial counsel failed to attack the superseding indictment or move to continue the trial so that counsel could "prepare a coherent defense in light of the drastically changed circumstances created by the superseding indictment." (Doc. 160, p. 6). Fifth, trial counsel violated *Lafler v. Cooper*, ___ U.S. ___, 132 S.Ct. 1376, 182 L.Ed.2d 398 (2012), and *Missouri v. Frye*, ___ U.S. ___, 132 S.Ct. 1399, 182 L.Ed.2d 379 (2012), by not placing "on the record that he had in fact advised the defendant that a specific plea offer of 120 months was being offered to him and that in trial counsel's

opinion such plea should be accepted in light of the evidence against him . . . ."[1] (Doc. 167, p. 4).

Sixth, trial counsel allowed Defendant to testify, when that testimony was that he was guilty of all the crimes charged and not Eric Paul Emmanuel, his co-defendant. Trial counsel did this without making an application to the court or explaining why he would allow Defendant to do it. To compound the error, after the jury found Emmanuel guilty anyway, Defendant was given a two-point enhancement to his offense level under U.S.S.G. § 3C1.1 for attempting to obstruct justice by committing perjury. (Doc. 167, p. 4-5). Seventh, trial counsel failed to give a closing argument. (Doc. 167, pp. 5-6).

III. Strickland *and Ineffective Assistance of Counsel*

Sixth Amendment claims for ineffective assistance of counsel are governed by *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). *Strickland* sets forth a two-pronged test to establish ineffective assistance of counsel. First, counsel's performance must be deficient. *Palmer v. Hendricks,* 592 F.3d 386, 394 (3d Cir. 2010)(citing *Strickland*). "Performance is deficient if counsel's efforts 'fell below an objective standard of reasonableness' under 'prevailing professional norms.'" *Shotts v. Wetzel*, 724 F.3d 364 (3d Cir. 2013)(quoting *Strickland*). "The defendant must also 'overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *United States v. Watson*, 536 F. App'x 232, 233 (3d Cir. 2013)(nonprecedential)(quoting *Strickland*).

---

[1] This claim replaces the claim in the original memorandum about the plea offer. The original claim was that counsel had failed to advise Defendant "concerning acceptance of" the plea offer "that would have resulted in a substantially lower sentence." (Doc. 160, p. 6).

Second, counsel's deficient performance must have prejudiced the defense. *Palmer*, 592 F.3d at 394 (citing *Strickland*). "To demonstrate prejudice, 'a defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" *Shotts*, 724 F.3d at 375 (quoting *Strickland*). Prejudice is "evaluated in light of the totality of the evidence at trial: a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support." *Grant v. Lockett*, 709 F.3d 224, 235 (3d Cir. 2013)(quoted cases and internal quotation marks omitted).

IV.   *The Merits of the Claims*

        A.   *The Failure to File a Motion to Suppress the Marijuana Seized in Arizona*

Defendant's first claim is that trial counsel was ineffective in failing to file a motion to suppress the introduction into evidence of marijuana seized during the Arizona traffic stop of Defendant in May 2009 while he was operating a tractor-trailer. According to Defendant's amended memorandum of law, a motion to suppress could have been made on the following grounds: (1) there was no reasonable suspicion that Defendant had committed any crime justifying the stop; (2) Defendant was detained for a lengthy period of time with no articulable reason for the detention; and (3) the canine walk-and-sniff search was conducted without a warrant, without consent, and with no reasonable suspicion or probable cause for believing a crime had been committed. Defendant points out that a motion to suppress had been filed in the Arizona criminal case against him and

was awaiting an evidentiary hearing.[2]   In opposing this claim, the government argues that it is too vague, that it ignores the trial testimony in this case of the Arizona officer showing that the stop and seizure were valid, and that Defendant did not produce the motion that had been filed in the Arizona proceedings.  The government also argues that the other evidence was sufficient to convict Defendant even without the Arizona evidence.

For the first time, attached to his reply brief, Defendant has produced a copy of the Arizona suppression motion and the accompanying brief.  He waves us in the direction of the motion and argues that the motion itself provides a "sound factual and legal basis" for filing a suppression motion in the instant proceedings.  (Doc. 182, p. 5).  He also asserts that we cannot look at the trial testimony to determine whether the motion would have had merit.

We disagree with Defendant that the motion itself provides a sufficient factual or legal basis to suppress the evidence.  The motion is a short paragraph asserting conclusionally that Defendant's Fourth Amendment rights were violated by the traffic stop and subsequent seizure of the marijuana.  (Doc. 182-2, ECF p. 32).  There are more factual assertions in the supporting brief, and we turn to that document to see if Defendant's claim has merit.

As we review the brief, it makes the following factual assertions: (1) the officer stopped Defendant on the highway after observing an "equipment violation," not a "traffic violation;" (2) the officer requested Defendant's driver's license, registration, insurance and bills of lading; (3) Defendant also provided his logbook and said it was not

---

[2] Arizona had filed charges against Defendant arising from the discovery of the marijuana in his trailer.  Those charges were dismissed.  The prosecutor in the instant case said that the state charges were dismissed because the marijuana seized in Arizona had been made part of the instant case by the superseding indictment.  (Doc. 144, sentencing transcript, pp. 5-6).

up to date; (4) the officer took Defendant's driver's license and vehicle paperwork to his patrol car where he began to conduct records checks on Defendant and his trucking company; (5) Defendant's driver's license was valid and there were no warrants for his arrest; (6) the officer returned to where Defendant was sitting in his truck and asked him to update his logbook; (7) Defendant complied and brought it back to where the officer was sitting in his patrol car; (8) the officer asked Defendant to open the trailer so that he could check the load; (9) Defendant complied with this directive and opened the trailer; (10) the officer and Defendant got in the trailer and walked to the front of it; (11) the officer then conducted a search of the tractor; (12) the officer completed the driver-vehicle examination report, gave Defendant a copy and told him he was free to leave; (13) as Defendant began walking back to his truck, the officer called out to him; (14) Defendant returned; (15) the officer asked for consent to search the truck, and Defendant refused; (16) the officer called for a canine unit; (16) the canine unit arrived about one hour and twenty-two minutes after Defendant was stopped and detained; (17) the canine allegedly alerted to the driver's side rear door of the trailer.  (Doc. 182-2, ECF pp. 34-35).

        On these factual allegations, the following legal arguments were made in the brief.  First, the initial stop was improper because the officer had a mistaken belief that the law permitted him to stop Defendant for an "equipment violation" rather than a "traffic violation."  Second, the second stop was illegal (the first stop having ended when Defendant was told he was free to go) because Defendant did not consent to further questioning or detention but merely acquiesced to the officer's authority and because there was no reasonable suspicion of criminal activity.

        A defendant's claim that his lawyer was ineffective in not moving to suppress evidence under the Fourth Amendment requires him to show two things: (1) the Fourth Amendment claim was meritorious; and (2) "a reasonable probability that the

verdict would have been different absent the excludable evidence in order to demonstrate actual prejudice." *Kimmelman v. Morrison,* 477 U.S. 365, 375, 106 S.Ct. 2574, 2583, 91 L.Ed. 2d 305 (1986).  Contrary to Defendant's assertion, we can look at the trial testimony of the arresting officer to determine if the Fourth Amendment claim is meritorious.[3]  *See Ray v. United States*, 721 F.3d 758, 763 (6th Cir. 2013)(relying on trial testimony to resolve a claim that counsel was ineffective in not filing a motion to suppress).

At trial, the officer testified as follows.  He is a motor vehicle safety inspector for the Arizona Department of Public Safety.  (Doc. 133, p. 109).  His job is to "stop commercial vehicles for various federal violations dealing with the safety of their vehicles."  (*Id.*).  On May 13, 2009, he saw Defendant operating a tractor-trailer which was missing reflective tape on the trailer doors and both sides of the trailer.  (*Id.*, p. 112).  Reflective tape is a requirement of the Federal Motor Carrier Association.  (*Id.*, p. 113).  He initiated a traffic stop of the vehicle.  (*Id.*, p. 114).  Defendant was the sole occupant.  (*Id.*, p. 115).

The officer asked for Defendant's driver's license, medical card, registration for the truck and trailer, his logbook, insurance, and the bill of lading.  (*Id.*, p. 116).  The logbook had not been filled out for about three days.  (*Id.*, p. 117).  The bill of lading was

---

[3] We recognize that the government argues that Defendant cannot show prejudice because the rest of the evidence would have established his guilt. However, we think the sentence would have been different. The marijuana seized in Pennsylvania weighed 2,958.95 kilograms. (PSR ¶ 8). The marijuana seized in Arizona weighed 498.96 kilograms. (PSR ¶ 9). The total weight was 3,457.91 kilograms. (*Id.*). Under U.S.S.G. § 2D1.1, the base offense level for at least 3,000 kilograms but less than 10,000 kilograms of marijuana is 34. However, if the Arizona marijuana had been successfully suppressed, under section 2D1.1, Defendant would have had a base offense level of 32, not 34, as an amount of marijuana less than 3,000 kilograms but at least 1,000 is assigned a base offense level of 32. Defendant's guideline range was 188 to 235 months. (PSR ¶ 62). He was sentenced to the low end of the range. Everything else being equal, a base offense level of 32 would have reduced his guideline range to 151 to 188 months.

unusual because it was handwritten and there was no contact information for the shipping company; with no address for the shipper, the company could not be contacted if the driver had to do so for some reason. (*Id.*).  Defendant appeared agitated, very nervous. (*Id.*, p. 118).  When the officer asked him twice where he was going, Defendant replied both times "up a ways." (*Id.*).  The officer did a level two inspection, a walk around the vehicle and an examination of the driver's paperwork. (*Id.*, p. 119).  He also walked into the back of the trailer. (*Id.*, p. 126).  He had Defendant update the logbook and issued him two warnings, for the missing reflective tape and for the logbook not being current. (*Id.*, p. 120).  Defendant had several air fresheners in the cab, a "gob" of them, that made it almost impossible to smell anything other than air fresheners. (*Id.*, pp. 141-42).

  The officer told Defendant he was free to leave. (*Id.*, p. 121).  He let Defendant walk away and then called out to him and asked if he could ask him a few questions. (*Id.*).  Defendant said he could. (*Id.*).  The officer asked him if he had any illegal drugs in the truck or trailer. (*Id.*).  Defendant replied he would not jeopardize his vehicle. (*Id.*).  The officer then specifically asked if Defendant had any marijuana, cocaine, methamphetamine, or large amounts of United States currency in the tractor-trailer. (*Id.*, p. 122).  Defendant answered in the negative (*Id.*).

  At that point, the officer called for a canine unit.  "[I]t wasn't very long" before the drug dog arrived. (*Id.*).  After the drug sniff, the officer spoke with the dog's handler, and based on that conversation, conducted the search of the trailer. (*Id.*).

  The first argument in the state-court brief is that the officer made a mistake of law in thinking that he could make a stop for an "equipment violation" rather than a "traffic violation."  However, nothing in the brief supports this contention, and the officer's testimony, uncontradicted in these 2255 proceedings, was that he had the authority to

-8-

stop commercial vehicles for violations of federal law and did so for Defendant because the latter's trailer lacked reflective tape. Contrary to Defendant's assertion, this initial stop of Defendant's vehicle was proper as it was based on a reasonable articulable suspicion that Defendant had violated the law. *See United States v. Delfin-Colina*, 464 F.3d 392, 397 (3d Cir. 2006).

Nor do we see on this record a meritorious claim that Defendant's detention after the officer returned Defendant's papers and told him he could leave violated the Fourth Amendment. We need not resolve the slight factual dispute between the parties on this issue. Defendant asserts that when he returned to the officer after being summoned, he refused to consent to a search of the vehicle. The officer testified that Defendant agreed to answer more questions.

As shown below, we need not also decide whether this was a second stop, as Defendant asserts. *See United States v. Robinson*, 529 F. App'x 134, 137 (3d Cir. 2013)(nonprecedential)("In this case, it is unnecessary for us to determine whether there were two separate stops. As long as Hope had reasonable suspicion to justify expanding the scope of the initial traffic stop, it is irrelevant whether Robinson felt free to leave after his license and other documents were returned.").

"After a valid traffic stop, 'an officer who develops a reasonable, articulable suspicion of criminal activity may expand the scope of an inquiry beyond the reason for the stop and detain the vehicle and its occupants for further investigation.'" *Id.* at 138 (quoting *United States v. Givan*, 320 F.3d 452, 458 (3d Cir. 2003)). To determine if there was reasonable suspicion, a reviewing court must look at the totality of the circumstances. *Id.* (quoting *Givan*, 320 F.3d at 458). Factors that may lead an officer to decide he has reasonable suspicion cannot be viewed in isolation "as innocent factors taken together may appear suspicious to an experienced officer." *Id.*

-9-

Here, the officer testified to factors, uncontradicted in these 2255 proceedings,[4] that support reasonable suspicion while the initial traffic stop was underway: (1) the logbook was not current; (2) the bill of lading was unusual because it was handwritten and there was no contact information for the shipping company; (3) Defendant appeared agitated, very nervous; (4) when the officer asked him twice where he was traveling, Defendant replied both times "up a ways;" and (5) Defendant had several air fresheners in the cab, a "gob" of them, that made it almost impossible to smell anything other than air fresheners. (*Id.*, pp. 141-42). These circumstances would have justified the officer in expanding the scope of the initial traffic stop. *See generally*, *Robinson*, 529 F. App'x at 138-39 (unusual explanation of travel plans and excessive air fresheners); *United States v. Fraguela-Casanova*, 858 F. Supp. 2d 432, 440 (M.D. Pa. 2012)(nervousness, irregularities in the logbook and bill of lading).

Defendant's first claim therefore lacks merit.

B. *The Failure to Move to Dismiss the Counts Relating to the Arizona Marijuana on the Due Process Ground of Destruction of Evidence*

Defendant contends trial counsel failed to move "to dismiss the counts relating to the Arizona marijuana" on the due-process ground of destruction of evidence.[5] As he did with the suppression motion, Defendant points us in the direction of the motion to dismiss filed in the Arizona case based on the gap in the video record of the stop. (Doc. 182-2, ECF p. 1). As further support for this claim, Defendant cites the settlement

---

[4] In 2255 proceedings, the defendant has the burden of proving that he is entitled to relief. *See United States v. Eakman,* 378 F.3d 294, 302 (3d Cir. 2004).

[5] In our November 26, 2013, memorandum, we mistakenly described this claim as one based on counsel's failure to seek dismissal of Count 3, and the parties followed our lead in subsequent filings.

agreement in *Arnold v. Arizona Dep't of Public Safety*, No. 01-CV-1463, 2006 WL 2168637, at *3 (D. Ariz. July 31, 2006). That settlement agreement requires that traffic stops in Arizona be videotaped.

In the instant case, the officer testified that his patrol car was mounted with a camera that is supposed to start automatically when the lights are turned on and stop when the traffic stop ends. (*Id.*, p. 135). However, he admitted that did not happen in this case. (*Id.*, pp. 135-36). There was a gap in the video. (*Id.*, p. 136). The officer does not know how this happened, only that his "camera malfunctioned." (*Id.*, p. 136-37). The brief in support of the dismissal motion alleges that the gap occurred during the canine sniff. (Doc. 182-2, ECF p. 5).

To begin with, we agree with the government that the *Arnold* settlement agreement does not assist Defendant. As the government argues, the settlement agreement does not specify a remedy for a violation of the agreement. Indeed, the brief in support of the dismissal motion in the Arizona case does not rely on the settlement agreement but merely cites that agreement as the reason why the evidence of the stop, the video, existed in the first place. In relevant part, the brief then argues a due-process claim based on *Arizona v. Youngblood*, 488 U.S. 51, 109 S.Ct. 333, 102 L.Ed.2d 281 (1988).[6]

It also appears that a due process claim is meritless. On a federal due-process claim based on destruction of evidence, a defendant must show the prosecution's bad faith in the loss of the evidence. *United States v. Heiser*, 473 F. App'x

---

[6] The brief also made arguments based on the law of various states, but a section 2255 motion can only be made based on violations of the Constitution or federal law. *See Arrington v. Bledsoe*, 497 F. App'x 176, 177 (3d Cir. 2012)(nonprecedential); 28 U.S.C. § 2255(a).

-11-

161, 166 (3d Cir. 2012)(nonprecedential).  To show bad faith, there must be either official animus toward the defendant or a conscious effort to suppress exculpatory evidence.  *Id.*

In the instant case, Defendant presents no facts to establish either one of these factors.  The only evidence is from the officer, who testified that there was a malfunction in his camera.  This is not enough for a due-process claim seeking either dismissal of the charges or suppression of the evidence.

> C.  *The Failure to Oppose the Government's Rule 404(b) Notice*

Defendant claims that counsel was ineffective in not opposing the government's "untimely" notice under Fed. R. Evid. 404(b), filed August 25, 2010, that it was going to introduce the marijuana seized in Arizona as "other acts" evidence.  Defendant contends the notice should have been opposed on the bases that: (1) it was filed on the eve of trial; (2) the prejudicial effect of the Arizona evidence outweighed its probative value; (4) Defendant's "constitutional right would be violated because that was a pending case"; (5) the Arizona incident was not part of the charged conspiracy; and (6) "bad acts evidence was inadmissible because the defendant denied the underlying charges."  (Doc. 160, pp. 8-9).

This argument lacks merit.  As the government points out, the superseding indictment was filed on September 1, 2010.  That indictment charged Defendant with a drug-trafficking conspiracy and a substantive drug-trafficking offense that encompassed the Arizona stop both chronologically and geographically.  Rule 404(b) does not apply when evidence is admissible as part of the charged offenses.  *See United States v. Cross*, 308 F.3d 308, 320 (3d Cir. 2002).

D.  *The Failure to Attack the Superseding Indictment
or Move to Continue the Trial*

Defendant claims that trial counsel was ineffective in failing to attack the superseding indictment or in not moving for a continuance of trial. According to Defendant, the superseding indictment drastically changed the case from one in which Defendant was merely a passenger in a tractor-trailer hauling marijuana to one which included an incident where Defendant was hauling marijuana on his own.[7] If counsel had taken either of these actions, he could have "prepare[d] a coherent defense in light of the drastically changed circumstances created by the superseding indictment." (Doc. 160, p. 6).

We reject this argument. As the government contends, Defendant does not specify the coherent defense that could have been prepared. Vague and conclusory allegations are not sufficient. *United States v. Thomas*, 221 F.3d 430, 437 (3d Cir. 2000).

E.  *The Failure to Place on the Record a Plea Offer
From the Government*

Defendant claims trial counsel was ineffective by not placing "on the record that he had in fact advised the defendant that a specific plea offer of 120 months was being offered to him and that in trial counsel's opinion such plea should be accepted in light of the evidence against him . . . ." (Doc. 167, p. 4). In support of this claim, Defendant cites *Lafler v. Cooper*, ___ U.S. ___, 132 S.Ct. 1376, 182 L.Ed.2d 398 (2012), and *Missouri v. Frye*, ___ U.S. ___, 132 S.Ct. 1399, 182 L.Ed.2d 379 (2012).

---

[7] When Defendant and his co-defendant were stopped in Pennsylvania, Defendant was sitting in the tractor's passenger seat.

This claim lacks merit. Neither of these cases requires defense counsel to place a plea offer on the record, although in *Frye*, the Supreme Court suggested that plea offers should be placed on the record. ___ U.S. at ___, 132 S.Ct. at 1408-09.

### F. *Trial Counsel Allowed Defendant to Testify When Defendant Incriminated Himself on the Stand*

Defendant claims trial counsel was ineffective in allowing him to testify, when that testimony was that he was guilty of all the crimes charged and not Eric Paul Emmanuel, his co-defendant. Trial counsel did this without making an application to the court or explaining why he would allow Defendant to do it. To compound the error, after the jury found Emmanuel guilty anyway, Defendant was given a two-point enhancement to his offense level under U.S.S.G. § 3C1.1 for attempting to obstruct justice by committing perjury. (Doc. 167, p. 4-5). Defendant argues that if his counsel had advised him that this is what would happen if he testified as he did, he would not have taken the witness stand. (*Id.*, p. 5).

As the government points out, the difficulty for Defendant is that the trial record clearly shows that counsel did not know that Defendant was going to testify that he was guilty. After Defendant took the stand, he answered questions from his counsel about his background and work experience. (Doc. 143, trial transcript, pp. 90-94). Counsel then began to ask questions relating to the charged offenses.

> [Counsel]: Mr. Narcisse, if you would turn to Government's Exhibit Number 1, please?
>
> [Defendant]: You can ask me.
>
> [Counsel]: Okay, it says international registration plan for Ayity Finest Trucking Company.
>
> [Defendant]: May I say something?

-14-

> [Counsel]: Go ahead.
>
> [Defendant]: Whatever that you're going to say that is incriminating to me, it is true. That's all I have to say. Anything that is incriminating to me is true.
>
> [Counsel]: Do you want to turn to number, Government's Exhibit Number 5, Mr. Narcisse? Have you ever seen this bill of lading?
>
> [Defendant]: I said it to you. Anything that is incriminating –-_
>
> THE COURT: Mr. Narcisse, you have to answer counsel's questions. He wants you to look at Exhibit Number 5 and he'll ask some questions about it I suppose. So would you do that, sir?

(Doc. 143, pp. 94-95). Counsel then requested a recess, which the court granted. (*Id.*, p. 95). After the recess, counsel "passed" the witness, stating he had no further questions. (*Id.*, p. 96). On cross-examination, Defendant continued to incriminate himself and said that his co-defendant "did not know of anything." (*Id.*, p. 97).

Since counsel did not know that Defendant would incriminate himself after he took the stand, counsel could not have been ineffective for putting Defendant on the stand. We note that Defendant argues in his reply brief that if counsel did not know what Defendant was going to say, this would constitute ineffectiveness. (Doc. 182, p. 7). We reject this argument. This record shows that counsel did know what he thought Defendant was going to say.

G. *Counsel Failed to Make a Closing Argument*

Defendant claims trial counsel was ineffective in failing to make a closing argument. (Doc. 145, p. 22).

As we noted in our November 26, 2013, memorandum, Counsel's performance is not deficient merely because he does not make a closing argument. *See Flamer v. Delaware*, 68 F.2d 710, 732 (3d Cir. 1995)("waiver of summation may be a

-15-

sound tactic in some circumstances"); *Yarborough v. Gentry*, 540 U.S. 1, 6, 124 S.Ct. 1, 4, 157 L.Ed.2d 1 (2003)("it might sometimes make sense to forgo closing argument altogether").  Here, it makes sense that counsel did not make a closing argument.  Since Defendant decided to admit guilt, there was nothing that counsel could have said in the circumstances.

IV.  *Conclusion*

Having considered all of the claims, we will issue an order denying the 2255 motion.  The order will also deny a certificate of appealability, based on the analysis in this memorandum.  However, Defendant is advised that he has the right for sixty (60) days to appeal our order denying his 2255 motion, *see* 28 U.S.C. § 2253(a), and that our denial of a certificate of appealability does not prevent him from doing so, as long as he also seeks a certificate of appealability from the court of appeals.  *See* Federal Rule of Appellate Procedure 22.

/s/William W. Caldwell
William W. Caldwell
United States District Judge

Date: July 9, 2014